**RADIATOR SPECIALTY COMPANY, Plaintiff,**

v.

**FIRST STATE INSURANCE COMPANY, Defendant.**

**No. C–C–84–517–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

Jan. 16, 1987.

E. Fitzgerald Parnell, III, Hugh B. Campbell, Jr., Weinstein, Sturges, Odom, Groves, Bigger, Jonas & Campbell, Charlotte, N.C., for plaintiff.

Robert D. Cordle, Helms, Mulliss & Johnston, Charlotte, N.C., for defendant.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendant's Motion for summary judgment and on Plaintiff's Motion for summary judgment.

Plaintiff is a North Carolina Corporation with its principal office in the Western District of North Carolina. Defendant is a Delaware insurance corporation with its principal office in Boston, Massachusetts.

This controversy arose as a result of Ambassador Insurance Company's (Ambassador) having been determined to be insolvent by the Superior Court of Washington County, Vermont, that order having been affirmed by the Vermont Supreme Court on or about August 27, 1986.

Ambassador, a Vermont company, carried the initial layer of liability coverage, with the Defendant writing the "Umbrella Liability Policy" coverage immediately above Ambassador's.

The Defendant's coverage ran from May 1, 1979 to November 13, 1980, during which period the parties agree the Plaintiff made payment of claims in the amount of $286,-784.06, with two claims still open.

The Plaintiff contends that because of Ambassador's insolvency that the Defendant's excess policy should "drop down" and pay the claims against Plaintiff for which Ambassador would have been liable but for its insolvency.

Thus the question for this Court is whether the language in the Defendant's policy is ambiguous so as to entitle the Plaintiff to a favorable construction and summary judgment or at least to allow the Plaintiff to introduce extrinsic evidence in the form of expert opinions and have the determination of what the Plaintiff contends is a factual question submitted to a jury.

The Declarations of the Umbrella Liability Policy state:

Item 3. Limits of Liability. The limit of the Company's liability shall be as stated

herein, *subject to all the terms of this policy having reference thereto.* (emphasis added).

1. $5,000,000 single limit any one occurrence combined ... in excess of:

"A. The amount recoverable under the underlying insurance as set out in Schedule A attached or

B. *$10,000.* Ultimate net loss as the result of any one occurrence not covered by said underlying insurance."

Under "Insuring Agreements," the policy provides:

1. Coverage.

To indemnify the INSURED for ULTIMATE NET LOSS as defined hereinafter, in excess of RETAINED LIMIT as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

A. ...

II. UNDERLYING LIMIT—RETAINED LIMIT.

The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

A. UNDERLYING LIMIT—an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; or

B. RETAINED LIMIT—The amount specified in item 3 IB of the Declaration as the result of any one occurrence not covered by said underlying insurance, and which shall be borne by the INSURED.

Schedule A (Schedule of Underlying Policies) lists Comprehensive General Liability limits of $500,000.00 for bodily injury and $500,000.00 aggregate.

ULTIMATE NET LOSS is defined in Paragraph L under DEFINITIONS as meaning

... the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the INSURED is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and except insurance purchased specifically to be in excess of this policy....

■ This clearly means that under the Defendant's policy, the Plaintiff is entitled to recover from Defendant the ultimate net loss it has suffered after deducting: (1) Any other recovery by the Plaintiff; (2) Any salvage the Plaintiff may obtain; (3) Any other insurance to which the Plaintiff may be entitled (whether recoverable or not) *other* than the underlying insurance the Plaintiff has purchased and insurance the Plaintiff has purchased specifically to be in excess of this policy.

After deducting all that to obtain the "Ultimate Net Loss," then under "Insuring Agreements," Paragraph 11, if the ultimate net loss exceeds the limits of liability of the underlying insurance listed in Schedule A, then and only then would the Defendant's policy pay whatever that excess was. The phrase in Paragraph L in parenthesis "(whether recoverable or not)" has no relation to what loss the Defendant is insuring against under Paragraph 11 of the Insuring Agreements. That paragraph states that the Defendant is liable for the ultimate net loss in excess of

A. Underlying limit—an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the insured.

It does *not* say "recoverable underlying insurance listed in Schedule A of underlying insurance...."

That seems to the Court to be very clear and unambiguous.

It is noted that the Defendant's policy did not provide that the underlying insurance listed in Schedule A had to be "collectible", distinguishing the Schedule A under-

lying policies from "other underlying insurances collectible by the insured".

Paragraph G under "Conditions" in Defendant's policy, reads:

G. PAYMENT OF ULTIMATE NET LOSS: Coverage under this policy shall not apply unless and until the INSURED, or the INSURED'S underlying insurer, shall be obligated to pay the amount of the UNDERLYING LIMIT OR RETAINED LIMIT on account....

In this case the insured (the plaintiff) was obligated to pay the amount of the underlying limit at the time Ambassador failed. The condition states that coverage of Defendant's policy does not apply "unless and until" the insured (Plaintiff) *or* the insured's underlying insurer, shall be obligated to pay the amount of the underlying limit ($500,000.00).

The disjunctive "or" is used so that Defendant's coverage does not apply unless and until the insured *or* the underlying insurer shall be obligated to pay.

The *insured* here was obligated to pay since the *insurer* was insolvent. However, the insured has not been obligated to pay more than $286,784.06 up to this date, and therefore has not paid the underlying limit of $500,000.00 and thus Defendant's policy does not afford coverage under the terms and conditions of its Insuring Agreements.

It would simply make no sense to hold that an "excess" insurer should be liable as a primary insurer. This would impose a liability on the "excess" insurer which is not bargained for in its premium that is based on the lesser risk which an excess carrier agrees to assume.

Plaintiff argues in its Memorandum in support of its Motion for summary judgment and in opposition to Defendant's Motion for summary judgment:

1. IF INSURANCE POLICIES ARE REASONABLY SUSCEPTIBLE TO TWO INTERPRETATIONS, THE ONE IMPOSING LIABILITY, THE OTHER EXCLUDING IT, THE FORMER IS TO BE ADOPTED AND THE LATTER REJECTED.

The key word in this argument is "reasonably." Thus, the question is whether it is reasonable to assume that when an "excess" insurer agrees to insure for losses over $500,000.00, it really means that it will insure for all losses the insured suffers from zero amount up. This Court does not think that that is a reasonable interpretation, simply because on the Declaration page, the policy states that the Company's limit of liability, *"subject to all the terms of this policy having reference thereto "* is limited to $5,000,000.00 in excess of the amount recoverable under the underlying insurance as set out in Schedule A attached which lists a $500,000.00 comprehensive General Liability Policy, as the primary insurance. To so hold would completely ignore all of the definitions and Terms and Conditions of the Policy, which clearly rule out Plaintiff's argument that this policy is subject to two interpretations.

2. THE ANALYSIS OF "DROP DOWN" CASES HOLDS THAT THE WORDS "THE AMOUNT RECOVERABLE" SHOULD BE CONSTRUED IN FAVOR OF THE INSURED TO MEAN EXPOSURE OF THE CARRIER FOR AMOUNTS WHICH THE INSURED IS NOT ABLE TO ACTUALLY RECOVER FROM THE UNDERLYING INSURER BECAUSE OF ITS INSOLVENCY.

To so hold would in effect mean that the Defendant insures the solvency of the underlying insurer, and again would completely ignore the other conditions of the policy, including condition G that "coverage under this policy shall not apply unless and until the INSURED, or the INSURED'S underlying insurer, shall be obligated to pay the amount of the UNDERLYING LIMIT or RETAINED LIMIT...." Thus, only if either the Plaintiff *or* its insurer are *obligated* to pay the amount of the underlying limit or retained limit would the Defendant be liable. The amount of the underlying limit has not been reached and the

retained limit is not applicable because the occurrences here are covered by the underlying insurance.

3. EXPERT WITNESS TESTIMONY BY EXPERIENCED AGENTS IS ADMISSIBLE BECAUSE IT IS HELPFUL TO THE TRIER OF FACT, AND THE MEANING THAT SHOULD BE GIVEN BY A COURT TO WORDS IN A CONTRACT IS A QUESTION OF FACT, NOT A QUESTION OF LAW.

The Plaintiff's expert witnesses concluded that the policy provision to pay in excess of the amount recoverable under the underlying insurance meant that whatever amount was paid by the underlying insurance, then the Defendant would pay in excess of that, and that since Ambassador's coverage was exhausted by virtue of its inability to pay claims and by the direction of the Vermont Court, then the Defendant steps down and becomes the primary insurance, and that this conclusion was reached by reading under "Insuring Agreements" "III. Limits of Liability" which provides that if underlying policies listed in the schedule are exhausted solely as the result of *occurrences* (emphasis added) taking place, then the Defendant steps down and becomes the primary insurance, and that Ambassador's coverage was exhausted by virtue of its inability to pay claims and by direction of the (Vermont) Court. The expert apparently failed to read the definition of "occurrence" in Paragraph H of the policy which reads:

> ... "occurrence" shall mean an accident or event including continuous repeated exposure to conditions, which results, during the policy period in personal injury or property damage....

██ That definition hardly includes insolvency of the underlying insurer issuing the underlying policies.

The Plaintiff's expert in his testimony similarly ignores the language under "I" of the Conditions when on Page 27 of his deposition he testified:

> And then under "I" in the conditions, it again says that if the underlying insur-

ance is exhausted by payment of judgments or settlement, then First State will assume charge of settlement.

Again, the expert did not read all the language of Condition I which provides:

> *Underlying Insurance:* If underlying insurance applicable in any one occurrence is exhausted by payment of judgment or settlement on behalf of the insured, the Company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence, *but only when this policy applies immediately in excess of such underlying insurance without the intervention of excess insurance of another insurer.* (emphasis added).

The policy does not apply because the settlements by the Plaintiff have not reached the $500,000.00 limit of the underlying insurance listed on Schedule A.

In conclusion, summary judgment is available when there is no genuine issue of material fact. Fed.R.Civ.P. 56(a). In considering the propriety of summary judgment in a contract case, only an unambiguous writing justifies summary judgment, and no writing is unambiguous if it is "susceptible of two reasonable interpretations." *American Fidelity & Casualty Co. v. London & Edinburgh Insurance Co.*, 354 F.2d 214, 216 (4th Cir.1965). The burden is on the moving party to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Charbonnages deFrance v. Smith*, 597 F.2d 406, 414 (4th Cir.1979).

When the Insuring Agreements, Definitions and Conditions of the policy are read, there is no ambiguity. The Defendant agreed to insure the Plaintiff against ultimate net loss it may incur in excess of an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A of underlying limits, *i.e.,* $500,000.00.

The Plaintiff's losses to date have not reached that amount.

The Plaintiff in its Complaint makes four claims for relief.

The first and third claims are for the Court to declare that the Defendant indemnify and defend the Plaintiff from and against any further costs of defense or liability to each of the claimants referred to in Exhibit E of the Complaint.

The second claim is that the Defendant defend and declare that the Defendant is required to defend and indemnify for all amounts in excess of $10,000 of liability to each of the claimants referred to in Exhibit E.

The fourth claim in Plaintiff's Complaint is that the Court declare that Defendant is required to indemnify the Plaintiff from and against all sums in excess of $500,-000.00 for liability paid or incurred by Plaintiff in the aggregate in the actions referred to in Exhibit E.

As to the first, second, and third claims, absent a judgment against the Plaintiff in excess of $500,000.00, the Defendant has no obligation to provide the Plaintiff with a defense or to reimburse it for costs or fees in defense of the actions referred to in Exhibit E attached to the Complaint.

As to the fourth claim, Article III, Section 2 of the Constitution provides that the judicial power shall extend to controversies between citizens of different states. In this case the Plaintiff is seeking a declaration by this Court in its fourth claim that Defendant be required to indemnify it from and against all sums in excess of $500,-000.00. There are seven claims listed in the Complaint, Exhibit E. Five claims have been settled for $286,784.06. Therefore, Plaintiff's request that this Court adjudge the Defendant liable to indemnify the Plaintiff from and against all sums in excess of $500,000.00 for liability paid or incurred by Plaintiff does not constitute an actual controversy between the Plaintiff and Defendant at the present time since the Plaintiff does not have a real immediate claim against the Defendant, and it thus does not constitute a justiciable claim before this Court.

Defendant's Motion for summary judgment as to all claims will be granted and Plaintiff's Motion for summary judgment will be denied. Judgment will be filed simultaneously with this Memorandum of Decision.