Argued and submitted October 17, 1990, affirmed March 13, reconsideration denied May 8, petition for review allowed July 23, 1991 (311 Or 643)

# HOFFMAN CONSTRUCTION COMPANY OF ALASKA,
### and Hoffman Corporation,
*Appellants,*

*v.*

# FRED S. JAMES & CO. OF OREGON,
*Defendant,*

*and*

# CENTURY INDEMNITY COMPANY,
*Respondent.*

(A8901-00240; CA A63379)

807 P2d 808

Thomas H. Tongue, Portland, argued the cause for appellants. With him on the briefs were G. Kenneth Shiroishi,

I. Kenneth Davis and Dunn, Carney, Allen, Higgins & Tongue, Portland.

Peter R. Chamberlain, Portland, argued the cause for respondent. With him on the brief were Richard A. Lee and Bodyfelt, Mount, Stroup & Chamberlain, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Riggs, J., dissenting.

## EDMONDS, J.

Plaintiffs brought this declaratory judgment action to recover under an umbrella liability insurance policy issued by defendant.[1] The trial court granted defendant's motion for summary judgment and denied plaintiffs' motion for summary judgment.[2] We affirm.

Defendant sold plaintiffs an umbrella liability insurance policy, which provides that defendant will pay the excess over the "amount recoverable" on the underlying insurance policies listed in the policy. Those policies were for $50,000 with Seaboard Surety Company (Seaboard) and $450,000 with Holland-America Insurance Company (Holland-America). Plaintiffs suffered a covered loss in the amount of $375,000. Seaboard paid the first $50,000 of the loss. However, after the loss was incurred, Holland-America became insolvent and was unable to pay any of plaintiffs' loss. The policy has no express provision about defendant's obligation in the event that either Seaboard or Holland-America is unable to pay. Plaintiffs made a demand on defendant for the $325,000 that could not be recovered from Holland-America. Defendant denied liability, and this action resulted. There is no dispute over material facts. The issue is whether defendant's policy provides coverage for losses not paid by Holland-America.

The policy provides, in part:

"COVERAGE AGREEMENTS

"* * * * *

"II.  LIMIT OF LIABILITY. The company shall only be liable for the ultimate net loss the excess of either

"(a)  the *amount recoverable* under the underlying insurances * * *, or

"(b)  the amount of the retained limit * * * in respect of each occurrence not covered by said underlying insurances.

"(hereinafter called the 'underlying limits'):

---

[1] Plaintiffs dismissed their claims against Fred S. James & Co. without prejudice. We refer to Century Indemnity Company as "defendant."

[2] Defendant filed a cross-claim against Fred S. James & Co., which cannot be fully adjudicated until this appeal has been decided. Under ORCP 67B, the trial court entered a final judgment in favor of defendant and against plaintiffs.

"and then only up to a further limit as stated in Item 5 of the Declarations in respect of each occurrence — subject to a limit as stated in Item 6 of the Declarations in the aggregate for each annual period during the currency of this policy, commencing from the effective date and arising out of any hazard for which an aggregate limit of liability applies in the underlying policies scheduled or listed herein. In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurances by reason of payment of claims in respect of occurrences occurring during the period of this policy, this policy, subject to all the terms, conditions and definitions hereof, shall

"(1) in the event of reduction pay the excess of the reduced underlying limit;

"(2) in the event of exhaustion continue in force as underlying insurance.

"The inclusion or addition hereunder of more than one insured shall not operate to increase the Company's limit of liability.

"* * * * *

## "CONDITIONS

"* * * * *

"J. LOSS PAYABLE. Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer shall have paid the amount of the underlying limits on account of such occurrence. * * *

"* * * * *

"L. OTHER INSURANCE. If other valid and collectible insurance, whether or not scheduled hereunder, which is written by another insurer is available to the Insured covering a loss also covered by this policy, other than insurance that is in excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance." (Emphasis supplied.)

▉ Construction of an insurance policy and interpretation of unambiguous language in the policy are questions of law. *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978). When the policy language has a plain, ordinary meaning and is subject to only one reasonable reading, we may look no further than that language. *Mortgage*

*Bancorp. v. New Hampshire Ins. Co.,* 67 Or App 261, 264, 677 P2d 726, *rev den* 297 Or 339 (1984). We read the policy as a whole and not as a collection of separate parts. *Fisher v. California Insurance Co.,* 236 Or 376, 380, 388 P2d 441 (1964).

Plaintiffs argue that the phrase "amount recoverable" in the "LIMIT OF LIABILITY" clause means that defendant is required to pay for amounts that the insured is not able to recover from Holland-America. However, that interpretation of "amount recoverable" creates unacceptable inconsistencies with the other clauses in the policy. The "LIMIT OF LIABILITY" clause in the policy defines the risk assumed by defendant. When read with the "LOSS PAYABLE" clause, the context of the term "amount recoverable" refers to the limits of coverage provided by the underlying policies. The "LOSS PAYABLE" clause provides that defendant can have no liability until the aggregate limits of the underlying insurance have been "paid." Plaintiffs' reading would render the "LOSS PAYABLE" clause meaningless, because defendant would be liable, even though Holland-America has not paid anything. It could not have been the parties' intent to include a meaningless clause in the policy. *See Nourigat v. Preferred Risk Mutual Ins. Co.,* 59 Or App 362, 365, 650 P2d 1075 (1982).

The "OTHER INSURANCE" clause also supports the conclusion that plaintiffs' reading is incorrect. That clause is intended to limit defendant's liability under the policy in the event that insurance other than the scheduled underlying insurance is available to the insured. *See Alaska Rural Elec. Co-op. v. Insco Ltd.,* 785 P2d 1193, 1196 (Alaska 1990). Collectibility of those proceeds triggers the operation of the clause. Plaintiffs' reading would require us to hold that the phrase "amount recoverable" is synonymous with "collectible." However, defendant's use of a different term in the "OTHER INSURANCE" clause shows that it was aware of both terms and chose to use them in the same policy in different contexts.

The parties agree that this is a case of first impression in Oregon. There is a split of authority in other jurisdictions.[3] We are persuaded that the trial court was correct when

---

[3] *See, e.g., Alaska Rural Elec. Co-op. v. Insco Ltd., supra; Kelly v. Weil,* 563 So 2d 221 (La 1990); *Lechner v. Scharrer,* 145 Wis 2d 667, 429 NW2d 491, *rev den* 147 Wis 2d 890 (1988).

it held that, under the plain meaning of the terms in the policy, defendant did not agree to pay a loss that Holland-America would have paid but for its insolvency.[4]

Affirmed.

**RIGGS, J.,** dissenting.

I disagree with the majority's conclusion that defendant is not required to pay for a loss that plaintiffs are unable to recover from their insolvent underlying insurer. Defendant agreed to pay losses in excess of the "amount recoverable" under the underlying insurance. "Recoverable" means "that which is able to be, or capable of being, recovered." *Pacific Atlantic S.S. Co. v. United States,* 120 F Supp 753, 755 (D Or 1954); *Webster's Third New International Dictionary* 1898 (unabridged 1971). Under the plain, ordinary meaning of that phrase, defendant is required to pay the excess over the amount capable of being recovered from the underlying insurer.

That interpretation creates no unacceptable inconsistencies with other provisions in the policy. The majority asserts:

> "The 'LOSS PAYABLE' clause provides that defendant can have no liability until the *aggregate limits* of the underlying insurance have been 'paid.'" 106 Or App at 333. (Emphasis supplied.)

That is incorrect. The "LOSS PAYABLE" clause does not use the term "aggregate limits." Instead, the clause provides that defendant's liability does not attach until the underlying insurer has paid the amount of the "underlying limits." The policy itself defines "underlying limits" to be the "amount recoverable" from the underlying insurer. Therefore, plaintiffs' interpretation of "amount recoverable" is not inconsistent with the "LOSS PAYABLE" clause.

---

[4] The dissent argues that it is incorrect to say that "[t]he 'LOSS PAYABLE' clause provides that defendant can have no liability until the *aggregate limits* of the underlying insurance have been 'paid.'" 106 Or App at 334. "Aggregate limits" means a single sum. As the dissent points out, the "LOSS PAYABLE" clause refers to "limits" in the plural. The dissent's statement that the policy defines " 'underlying limits' to be the 'amount recoverable' from the underlying insurer," 106 Or App at 334, arises from a reading of the "LIMIT OF LIABILITY" clause and not from any definition in the policy.

Neither is the interpretation inconsistent with the "OTHER INSURANCE" clause, which refers to "other valid and collectible insurance." The reference to "other collectible insurance" reinforces plaintiffs' interpretation that the underlying insurance must also be collectible or recoverable.

Although the majority disregards authorities from other jurisdictions, I find them persuasive. Cases in which language similar to that in defendant's policy has been considered have concluded that the umbrella insurer's coverage "drops down" to cover the risk of an underlying insurer's insolvency.[1] As one court noted:

> "A review of the state and federal jurisprudence in this country reveals that the controlling consideration on this 'drop down' issue is the agreement between the insurer and the insured, namely, the insurance policy itself. * * *

> "In one category there are excess policies that distinctly facilitate dropping down. The policies in this group state, in effect, that the underlying limit of the excess coverage is dependent on the 'collectibility' or 'recoverability' of the primary limits. For instance, in *McGuire v. Davis Truck Services, Inc.*, 518 So.2d 1171 (La.App. 5th Cir.), *writ denied*, 526 So.2d 791 (La. 1988) and *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764 (1982), the respective policies provided for liability in excess of 'the amount *recoverable* under the underlying insurance as set out in the schedule of the underlying insurance....' It is clear that in this type of policy the excess carrier does drop down to provide coverage. Insolvency of the underlying carrier prevents the primary limits from being collectible, or recoverable. If not recoverable because of insolvency, the underlying insurance does not constitute any part of a retained limit. Where this phraseology is used (liability in excess of the amount recoverable), the pro-coverage result is consistent in the cases." *Kelly v. Weil*, 563 So 2d 221, 222 (La 1990).

Cases holding that the umbrella insurer's coverage does not "drop down" have considered policies with different language or additional terms that clearly limited the insurer's liability

---

[1] *See, e.g., Sifers v. General Marine Catering Co.*, 892 F2d 386, *rev'd in part on other grounds* 897 F2d 1288 (5th Cir 1990); *Reserve Ins. Co. v. Pisciotta*, 30 Cal 3d 800, 180 Cal Rptr 628, 640 P2d 764 (1982); *Donald B. MacNeal, Inc. v. Interstate Fire & Casualty Co.*, 132 Ill App 3d 564, 477 NE2d 1322 (1985); *McGuire v. Davis Truck Services, Inc.*, 518 So 2d 1171, *writ denied* 526 So 2d 791 (La App 1988); *Lechner v. Scharrer*, 145 Wis 2d 667, 429 NW2d 491, *rev den* 147 Wis 2d 890 (1988).

to amounts in excess of the dollar limits of the underlying insurance.[2]

After reviewing the cases from other jurisdictions, I conclude that excess insurers who do not intend drop down coverage if an underlying insurer becomes insolvent can and do write their policies to exclude that liability. Defendant drafted the language of the policy and, if it meant to exclude drop down coverage, it could have done so. By using the term "amount recoverable," it expressly agreed to pay losses that are not recoverable from an insolvent underlying insurer.

For these reasons, I dissent.

---

[2] *See, e.g., Morbark Indus. Inc. v. Western Employers Ins. Co.,* 170 Mich App 603, 429 NW2d 213' (1988) (insurer liable for excess over "amount equal to the limits of liability indicated beside the underlying insurance"); *Werner Industries, Inc. v. First State Ins. Co.,* 112 NJ 30, 548 A2d 188 (1988) (declarations described coverage in excess over "amount recoverable" but additional language in policy limited insurer's liability to excess over the "limits of liability indicated beside the underlying insurance"); *Wurth v. Ideal Mut. Ins. Co.,* 34 Ohio App 3d 325, 518 NE2d 607 (1987) (insurer liable for excess over the "underlying limit," defined as "amounts of applicable limits of liability of the underlying insurance"); *Federal Ins. Co. v. Pacific Sheet Metal,* 54 Wash App 514, 774 P2d 538, *rev den* 113 Wash 2d 1008 (1989) (insurer liable in excess over "amount equal to the limits of liability indicated beside the underlying insurance listed in the schedule").