REGENTS OF UNIVERSITY OF MICHIGAN, Plaintiff,

v.

EMPLOYEES OF AGENCY RENT–A–CAR HOSPITAL ASSOCIATION and Agency Rent–A–Car Employees Health Care Plan, Defendants.

No. 95–CV–70736–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 11, 1995.

Diane Raimi, Ann Arbor, MI, for plaintiff.

Orlando L. Blanco, Troy, MI, for defendants.

## OPINION

DUGGAN, District Judge.

### I. Background

This matter is before the Court on cross-motions for summary judgment. Jeffrey Westra and Karen Westra, through their respective employers had a policy of medical insurance covering themselves and their family. Substantial medical bills were incurred as a result of their son Matthew's illness. Matthew was treated at plaintiff Regents of University of Michigan's Medical Center. Jeffrey Westra's coverage was provided under the Agency Rent–A–Car Hospitalization (Agency) plan. Karen Westra's coverage was provided under the 65 Security Plan. Both policies were governed by the Employ-

ee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, and had competing coordination of benefits (COB) provisions. Both insurers contended that the other insurer's coverage was primary and that their coverage was excess.

On March 11, 1993, this Court issued an Opinion ruling that the 65 Security Plan's COB provision was invalid because it was gender based, *i.e.* it provided that if the children are covered under two plans, the primary plan is the coverage provided by the father's plan. This Court ruled that such plan violated both Title VII, specifically 42 U.S.C. § 2000e–2(a)(1), and Michigan's Elliott–Larsen Civil Rights Act, M.C.L.A. § 37.2202(1)(c), rendering such plan invalid and unenforceable. The Court, therefore, ruled that the 65 Security Plan was "primary" and that the Agency's plan was "excess." *Westra v. Employees of Agency Rent–A–Car Hospitalization Ass'n*, No. 92–CV–74405–DT (E.D.Mich. Mar. 11, 1993).

Subsequently, the 65 Security Plan became insolvent and pursuant to an Order of the Honorable Jack B. Weinstein of United States District Court for Eastern District of New York, the 65 Security Plan was required to pay to plaintiff Medical Center, 10% of the eligible unpaid claims. *Cutler v. The 65 Security Plan*, No. CV–92–3491, et al. (E.D.N.Y. June 27, 1995).[1] Judge Weinstein's Order specifically provided that:

> notwithstanding the foregoing, UMMC shall not be deemed to have released or waived, and may continue to collect any additional sums of money, not ordered to be paid hereunder, arising out of the provision or services reflected on said Schedule A from any entity or insurer other than the Security Plan, including, without limitation, any other entity or insurer extending benefits, by assignment or otherwise, to the members, participants and beneficiaries of the Plan reflected on said Schedule A[.]

## II. Discussion

Medical Center now seeks to recover the balance of the unpaid bills from Agency contending that as a result of the 65 Security Plan's insolvency and inability to pay the bills, Agency is responsible for payment of all bills not actually paid by the 65 Security Plan.

The issue before this Court is whether the Court's prior determination that Agency's obligation was that of an "excess" insurer, relieves it of any obligation with respect to the medical bills incurred because the 65 Security Plan provided "coverage" at the time the bills were incurred.

Medical Center contends that a reasonable interpretation of Agency's plan compels this Court to conclude that to the extent actual insurance benefits are not provided to the Westras by 65 Security Plan, Agency's policy "drops down" and provides primary coverage for any remaining bills. This Court agrees with Medical Center that under the terms of Agency's plan, Agency becomes obligated to pay for any medical bills not actually covered by the "primary" insurer.

The pertinent part of Agency's plan reads as follows:

**DO BENEFITS UNDER OTHER PLANS AFFECT THESE BENEFITS?**
**Yes.** Some individuals have medical or dental expense coverage in addition to coverage under this Plan. When this happens, the benefits from the "other plans" will be deemed to provide primary coverage. This may require a reduction in benefits under this Plan, so that the combined benefits will not be more than the expenses recognized under these plans.
An "other plan" means any plan of medical or dental expense coverage provided by:
1. Group insurance or any other arrangement of medical/dental coverage available to a member or enrolled eligible dependents.

In this Court's opinion, the above language is unambiguous. *See Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 942 (6th Cir. 1993). The plan language provides that the "benefits" from the "other plan" will reduce the benefits to be provided under Agency's plan. This Court finds that the language

---

**1.** Medical Center submitted a claim for unpaid bills as assignee of the Westras.

refers to benefits "received" from the "other plan" because the language specifically directs itself to the concern that benefits will not exceed expenses. Furthermore, the language of Agency's plan specifically refers to coverage "available."

The Court is aware that Medical Center received a payment of $8,694.42 for Matthew's medical bills. In addition, the Court based upon review of Judge Weinstein's Order is informed that the 65 Security Plan is required to make a payment of 10% of the bills owed to Medical Center. The Court finds that the benefits to which plaintiffs are entitled in this lawsuit shall be reduced by the "benefits" obtained through the proceedings before Judge Weinstein. Therefore, except for the 10% payment pursuant to Judge Weinstein's Order and previous "primary" payments made by the 65 Security Plan, there was no coverage "available" under an "other plan" once the 65 Security Plan became insolvent.

Counsel for both parties have informed the Court that they are not aware of any case which has decided the issue that is currently before the Court. Defendants bring to the Court's attention, in arguing by analogy, language from cases involving "umbrella" insurance coverage, in which the courts held that the excess carrier did not have to make payment until the expenses had exceeded the amount of an underlying and specifically referred to policy. These cases, however, are distinguishable. In the "umbrella" coverage cases, the insurer who issues the "umbrella" policy specifically agrees to provide coverage in excess of a certain amount and presumably sets premiums based on this limited risk. *See, e.g., New Process Baking Co. v. Federal Ins. Co.,* 923 F.2d 62 (7th Cir.1991); *Shapiro v. Associated Int'l Ins. Co.,* 899 F.2d 1116 (11th Cir.1990); *Morbark Indus., Inc. v. Western Employers Ins. Co.,* 170 Mich.App. 603, 429 N.W.2d 213 (1988). In *Morbark,* the provision of the umbrella policy set forth a $1,000,000 threshold of liability. *Morbark,* 170 Mich.App. at 605, 429 N.W.2d 213.

In the case before this Court, the language of Agency's plan calls for Agency to pay benefits to its participants and/or their dependents. The Court's previous ruling that Agency's COB provision is an "excess" provision, does not change the fact that Agency under its ERISA plan agreed to pay the benefits owing to its participants and their dependents. It is undisputed that Agency issued its policy without regard to whether Jeffrey Westra had any other policy of insurance.

The Court finds guidance in the Sixth Circuit's decision in *Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.,* 31 F.3d 371 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1177, 130 L.Ed.2d 1129 (1995)); *see also NALC Health Benefit Plan v. Lunsford,* 879 F.Supp. 760, 764–65 (E.D.Mich.1995). The Sixth Circuit noted that "[t]he underlying purpose of ERISA is to protect 'the interests of participants in employee benefit plans and their beneficiaries.'" *Auto Owners,* 31 F.3d at 375 (citations omitted). The Court concluded that:

> the terms of the TAV plan, including its coordination of benefits clause, must be given full effect in order to comply with a primary goal of ERISA, which is to safeguard the financial integrity of qualified plans by shielding them from unanticipated claims.

*Id.*

The Sixth Circuit identified two central interests of ERISA: (1) to protect the interests of participants in plans or their beneficiaries/dependents and (2) to safeguard the financial integrity of qualified plans by preventing them from having to pay unanticipated claims. In this case, the interests of the participants, or Medical Center who has been assigned a participant's rights, is protected by having Agency provide the medical benefits that it contracted to provide under the terms of the plan. The financial integrity of the plan is not being challenged by an "unanticipated claim," because Jeffrey Westra, who was employed by Agency, seeks through his assignee, Medical Center, benefits entitled to him under the terms of the plan. Agency cannot argue that it would not have anticipated having such a claim filed given that the express provisions of the plan provided for the type of medical benefits sought in this matter.

■ Defendants challenge plaintiff's standing to bring this action, because they note that only participants and beneficiaries have standing to recover ERISA benefits. *See Fugarino v. Hartford Life and Accident Ins. Co.*, 969 F.2d 178, 186 (6th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993). The Sixth Circuit has indicated that "[a] health care provider may assert an ERISA claim as a 'beneficiary' of an employee benefit plan if it has received a valid assignment of benefits." *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir.1991), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992).

Plaintiff attaches a "confirmation of assignment of benefits" form to its response brief (Pl's.Resp.Br.Ex. A). The form contains Jeffrey Westra's signature (or at least defendants have not maintained that it is not his signature) and is dated August 10, 1995. The form provides in pertinent part that:

> [t]his Assignment is intended to grant to the Assignee all rights that I may have in connection with benefits or other rights, under ERISA, the Plan, or other law or regulations, associated with the Services to the same extent, and to the fullest extent, that I would be entitled or have the power to exercise such rights on my own behalf or on behalf of my son Matthew Westra.

*(Id.)*. The Court finds that plaintiff has been properly assigned the rights of the Westras.

■ Defendants also contend that plaintiff's action is barred by the doctrine of res judicata. Defendants assert that res judicata bars a subsequent action when the facts or evidence essential to the maintenance of the two actions are identical and applies only when the issues and the parties or their privies in the prior actions are identical, *citing Roberts v. City of Troy*, 170 Mich.App. 567, 429 N.W.2d 206 (1988). The Sixth Circuit has identified the "four elements" of res judicata as:

1. A final decision on the merits in the first action by a court of competent jurisdiction;

2. The second action involves the same parties, or their privies, as the first;

3. The second action raises an issue actually litigated or which should have been litigated in the first action;

4. An identity of the causes of action. *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir.1992) (citations omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993).

Plaintiff does not disagree with the requirements of res judicata as asserted by the defendants; rather, plaintiff argues that the requirement of the "same issue" is lacking. This Court agrees with plaintiff. The issue previously decided by this Court was which insurance carrier was excess and which was primary. The Court was not asked to, and did not decide, the circumstances under which an "excess" carrier would be obligated to provide coverage. Therefore, defendants claim that res judicata bars plaintiff's claim lacks merit.

For the reasons set forth above, this Court finds that plaintiff is entitled to have the remainder of the medical bills paid by Agency.

■ Plaintiff also contends that it is entitled to attorney fees pursuant to 29 U.S.C. § 1132(g)(1). *See Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1301–05 (6th Cir.1991); *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985). The Court in its discretion may award reasonable attorney's fees. The following factors should be considered in determining whether to grant fees:

(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Armistead*, 944 F.2d at 1301 (citation omitted).

This Court after considering the abovementioned factors concludes that plaintiff is not entitled to attorney's fees. In particular,

the Court does not find "bad faith" on the part of defendants, and, as previously indicated, counsel for both parties suggest that this issue is one of "first impression", since neither attorney was able to provide the Court with any case directly on point.

### III. Conclusion

For the reasons set forth above, the Court concludes that plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied. In addition, plaintiff's motion for attorney's fees is denied. Therefore, Agency is liable to plaintiff for amounts owed plaintiff for medical treatment provided to Matthew Westra. The Court does not address the damages aspect of this matter, because the parties have not provided the Court with specific information about the amount still owing to plaintiff. The Court is confident that counsel for both parties can agree upon a figure. However, if problems arise then the Court will consider the damages issue at a later date.

Plaintiff's counsel shall submit a proposed order for entry by the Court, consistent with this Opinion.