GEERDES v ST PAUL FIRE & MARINE INSURANCE COMPANY

Docket No. 64204. Submitted May 5, 1983, at Grand Rapids.—Decided September 14, 1983. Leave to appeal applied for.

Richard M. and Michele D. Geerdes brought a declaratory judgment action in Kent Circuit Court against St. Paul Fire & Marine Insurance Company, seeking an order that St. Paul was liable under the umbrella policy issued by St. Paul to Frank Steele for any claims in excess of the $50,000 policy limits of the policy of insurance issued by State Farm Mutual Automobile Insurance Company to Frank Steele's son, Thomas Steele, arising out of an automobile accident between Richard Geerdes and Thomas Steele. The trial court, George R. Cook, J., held that St. Paul did not become liable under its umbrella policy until the claims exceeded $350,000. The St. Paul umbrella policy provided that the company would become liable only when the ultimate net loss exceeded the greater of "an amount equal to the limit(s) of liability indicated beside underlying policy(ies) listed or insurance described in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the insured", or "the retained limit as defined in the last paragraph of Insuring Agreement II if the occurrence is not covered in whole or in part by such underlying policy(ies) of insurance". Plaintiffs argued that, since none of the listed policies were collectible by Thomas Steele, the umbrella policy became payable when the loss exceeded the $50,000 policy limit of the State Farm policy issued to Thomas Steele. Defendant argued that the $300,000 policy limit of the automobile policy listed in the umbrella policy must be added to the $50,000 policy limit of the State Farm policy issued to Thomas Steele, and, accordingly, defendant became liable for payment only when plaintiffs' claims exceeded $350,000. Plaintiffs appeal. Held:

1. The use of the phrase "other underlying insurance collectible by the Insured" clearly evidences the intent that only the policy limits of those policies which are collectible by the

REFERENCES FOR POINTS IN HEADNOTES
[1] 43 Am Jur 2d, Insurance § 271.
[2-3] 43 Am Jur 2d, Insurance § 275 et seq.

insured may be added to the policy limits of other insurance policies collectible by the insured in determining the point at which St. Paul becomes liable under the umbrella policy. Since the listed $300,000 automobile policy was not applicable to this accident by Thomas Steele, the only applicable policy was his $50,000 limit State Farm policy.

2. Since the retained limit was $250, the $50,000 limit determined under the first part of the test was the greater limit and therefore applicable. The trial court erred in holding that defendant was liable only for claims in excess of $350,000. Defendant, by the provisions of its policy, is liable where plaintiffs' claims exceed the $50,000 policy limit of the State Farm policy.

Reversed and remanded.

1. INSURANCE — JUDICIAL CONSTRUCTION.

Language in an insurance policy which is clear and unambiguous is to be construed according to its plain sense and meaning.

2. INSURANCE — JUDICIAL CONSTRUCTION.

A provision in an umbrella insurance policy which provides that the excess policy coverage will take effect upon a loss by its insured that is greater than the amount of the limit or limits of liability of the policy, policies or insurance listed in the umbrella policy "plus the applicable limits of any other underlying insurance collectible by the insured" is construed to mean that only the policy limits of those listed policies which are collectible by the insured, along with such other unlisted policies collectible by the insured, shall be used to compute the amount at which the umbrella coverage takes effect.

3. CONTRACTS — JUDICIAL CONSTRUCTION — SURPLUSAGE.

No word in a contract shall be rejected as surplusage if it serves some reasonable purpose.

*Rhodes, McKee & Boer* (by *William F. Mills),* for plaintiffs.

*Smith, Haughey, Rice & Roegge* (by *Anthony J. Quarto* and *L. Roland Roegge),* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and R. M. MAHER and P. R. JOSLYN,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Per Curiam. Plaintiffs appeal as of right from a declaratory judgment entered in favor of defendant.

On September 1, 1977, plaintiff Richard M. Geerdes was involved in an automobile accident with Thomas Steele. Plaintiffs then brought suit against Mr. Steele to recover damages for injuries suffered by Mr. Geerdes. At the time of the accident, Mr. Steele was driving his own car. That car was insured under a policy issued by State Farm Insurance Company with a limit of $50,000 insurance coverage for personal liability. Plaintiffs eventually discovered, however, that Mr. Steele's father maintained a personal catastrophe, or "umbrella", insurance policy issued by defendant. Mr. Steele was insured under that policy. An umbrella policy is one that is designed to cover losses to the insured which are not fully covered by other "underlying" insurance. The parties did not dispute that the umbrella policy was in full force and effect at the time of the accident. Rather, they contested the extent of liability which Mr. Steele must incur before defendant is required to provide coverage. The operative portion of the policy provides:

"(a) As respects [personal liability coverage], the Company's liability shall be only for the ultimate net loss in excess of the 'underlying limits' defined as the greater of:

"(I) an amount equal to the limit(s) of liability indicated beside underlying policy(ies) listed or insurance described in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured;

"(II) the retained limit as defined in the last paragraph of Insuring Agreement II if the occurrence is not covered in whole or in part by such underlying policy-(ies) or insurance * * *."

The plaintiffs argued that the above provision requires the defendant to pay them for any damages recovered against Mr. Steele once the $50,000 limit of the State Farm policy was exhausted. The trial court disagreed and ruled that the provision was unambiguous and that the policy did not provide coverage until Mr. Steele's liability or other loss exceeded $350,000.

The issue before the trial court, and now before this Court, is how this language is to be construed and applied to the facts of the present case. Our construction of that language differs significantly from that of the trial court and has produced a different result. Therefore, we reverse the judgment.

The above provision sets up a formula for computing the "underlying limits" or "floor" of defendant's liability. It is only after that floor is reached that the defendant is required to pay the insured's ultimate net loss. The underlying limit is the greater of the two figures described in defendant's policy. First, one must compute the limits of liability of the underlying policies listed or described in Schedule A of the umbrella policy, adding to that the limits of "other underlying insurance collectible by the Insured." The defendant argues that the correct figure here is $350,000. It arrived at this amount in the following manner. Listed in Schedule A is a policy of automobile insurance with a limit of $300,000. To this, the defendant adds the limit of Mr. Steele's policy—the "other" underlying policy collectible by the insured. That limit is $50,000. The trial court apparently agreed with this computation.

Nevertheless, we disagree. The language of (a)(I) is clear and unambiguous. Such language is to be construed according to its plain sense and mean-

ing. *New Amsterdam Casualty Co v Sokolowski,*
374 Mich 340, 342; 132 NW2d 66 (1965). So con-
strued, that language indicates that the only poli-
cies listed or described in Schedule A that are
considered in the computation are those that are
collectible by the insured. Essentially, (a)(I) calls
for the addition of the limits of scheduled policies
and "other underlying insurance collectible by the
Insured." To construe (a)(II) to require considera-
tion of scheduled policies that do not provide
coverage would be to read out of the final clause
the word "other".[1] No word in a contract should be
rejected as surplusage if it serves some reasonable
purpose. *Draper v Nelson,* 254 Mich 380, 383; 236
NW 808 (1931). The purpose of the word "other" is
to indicate that the only policies to be considered
in the calculation—whether scheduled or not—are
those that provide coverage.

Thus, the computation required in (a)(I) is to add
the limits of the scheduled policies collectible by
the insured to the limits of other collectible but
unscheduled policies. The parties agree that no
scheduled policy provides coverage for the acci-
dent. Consequently, the amount in (a)(II) is the
limit of Mr. Steele's unscheduled and collectible
State Farm policy: $50,000.

Second, the formula requires the computation of

"the retained limit as defined in the last paragraph of
Insuring Agreement II if the occurrence is not covered

[1] Compare, for example, the following sentence: "I have read *Mur-
der on the Orient Express* and other mystery novels written by
Agatha Christie." By virtue of the word "other" in the final clause,
the sentence clearly conveys the notion that *Murder on the Orient
Express* is a mystery novel by Agatha Christie. To construe the
sentence as suggesting that the cited writing lacks any of those
qualities would be to ignore the ordinary meaning of the word
"other".

in whole or in part by such underlying policy(ies) or insurance."

The plaintiffs argue that (a)(II) is ambiguous. They contend that the phrase "such underlying policy-(ies) or insurance" could refer to scheduled policies alone or to those and unscheduled policies as well.

The plaintiffs' argument, however, fails to focus on the critical language of (a)(II). That language is: "the retained limit as defined in the last paragraph of Insuring Agreement II." The remaining portion of (a)(II) merely paraphrases the language in the policy describing when the retained limit is in effect. The retained limit is the maximum amount the insured must pay for losses flowing from an occurrence which is covered by the umbrella policy but not covered by any other policy maintained by the insured. Thus, the retained limit applies when the occurrence is covered by no underlying policy. Regardless of how clearly the final clause of (a)(II) expresses the condition for the operation of the retained limit, it is clear that the amount referred to by (a)(II) is the retained limit. The retained limit is set out precisely in the policy. It is $250.

The final step of the formula is to determine the greater of the amounts calculated under (a)(I) and (a)(II). The greater amount is the underlying limit. Thus, the underlying limit is $50,000.

The trial court erred in ruling that the underlying limit was $350,000. The judgment is reversed and the case remanded to the trial court with instructions to enter a judgment consistent with this opinion.

Reversed and remanded. No costs.