492 So.2d 532 (1986)
Dodrell Mitchell RADAR, Plaintiff-Appellee,
v.
DUKE TRANSPORTATION INC. and Mission National Insurance Company, Defendant-Appellee, Defendant-Appellant.
No. 85-950.
Court of Appeal of Louisiana, Third Circuit.
July 21, 1986.
Montgomery, Barnett, Brown & Read, Wood Brown, III, New Orleans, for defendant-appellant.
Colleen McDaniel, Lafayette, for plaintiff-appellee.
Before GUIDRY, FORET and LABORDE, JJ.
GUIDRY, Judge.
This is an appeal by Mission National Insurance Company (Mission) from a judgment on a rule to show cause decreeing Mission obligated under its excess insurance policy to provide for the defense of its insured, Duke Transportation, Inc. (Duke), in a tort action.
*533 The instant matter stems from the institution of a tort action by plaintiff, Dodrell Mitchell Radar, against Duke Transportation, Inc., in which Radar seeks to recover $1,500,000.00 in damages for personal injuries sustained as a result of an accident allegedly caused by an employee of Duke.[1] In response to plaintiff's petition, Duke filed an exception of lis pendens asserting that a suit was then pending between the same parties, on the same cause of action in the United States District Court for the Southern District of Mississippi. The record reflects that this exception has not been disposed of and this issue is not before us. Thereafter, Duke filed a third party demand against Mission National Insurance Company, its excess insurance carrier, asserting that Mission owed Duke, not only "first-dollar" coverage under its policy of insurance, but also had a duty to defend Duke in the state action brought by Radar. Duke based its contention of "first-dollar" coverage on the fact that its primary general liability insurer, Northwest Insurance Company, was insolvent and in liquidation at the time this suit was filed. Duke also prayed for penalties and attorney's fees from Mission. At Duke's request, the trial court issued a rule to show cause why Mission should not be ordered to provide a defense for Duke. Mission answered and excepted to Duke's rule to show cause urging the improper use of summary process. Mission also denied that it owed Duke a defense in the instant case in light of the express provisions of its excess liability insurance policy.
On April 15, 1985, the trial court heard the rule to show cause, deciding the issue of improper use of summary process adverse to Mission. By judgment dated June 24, 1985, the trial court ruled in Duke's favor, concluding that the defense clause in Mission's policy was ambiguous and that Mission must provide a defense for Duke.[2] Mission was also ordered to reimburse Duke for all expenses, attorney's fees and costs incurred by it to date.
Mission appeals from that judgment contending that the trial court erred in (1) taking up the matter of Mission's alleged obligation to defend Duke on a summary rule to show cause; (2) deciding that Mission owed Duke a duty to defend without hearing any evidence at the hearing on the rule; and, (3) determining that Mission's policy mandated Mission to defend Duke under the circumstances of this case.
The determinative issue presented by this appeal is whether Mission, Duke's excess liability insurer, has a duty to defend Duke in the tort action brought against it because of the insolvency of Duke's primary liability insurer. A resolution of this issue hinges on the interpretation of the provisions of the policy of insurance provided by Mission to Duke.
The prime consideration in the interpretation of an insurance policy is to ascertain the true intention of the parties from the language of the policy as a whole. Harvey v. Mr. Lynn's Inc., 416 So.2d 960 (La.App. 2d Cir.1982). It is well settled in our jurisprudence that a valid insurance policy is a contract between the insured and the insurer and is thus the law between them. Fruge v. First Continental Life and Accident Ins. Co., 430 So.2d 1072 (La.App. 4th Cir.1983), writ denied, 438 So.2d 573 (La. 1983); Moncrief v. Blue Cross-Blue Shield of Arkansas, 472 So.2d 299 (La.App. 3rd Cir.1985).
As in the case of other written agreements, the terms and provisions of an insurance contract are construed in their general and popular meaning. Nida v. State Farm Fire & Casualty Co., 454 So.2d 328 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 486 (La.1984). All ambiguities must *534 be construed in favor of the insured and against the insurer, however, where the language of an insurance contract is clear and free of ambiguity, it constitutes the contract between the parties and courts have no authority to change or alter its terms under the guise of interpretation. Glass Services Unlimited v. Modular Quarters, 478 So.2d 1005 (La.App. 3rd Cir. 1985). In addition, insurers have the right to limit their liability and to impose whatever conditions they please upon their obligations under the policy in the absence of conflicts with laws or public policy. Fruge v. First Continental Life and Accident Ins. Co., supra.
We have carefully examined the excess liability insurance policy issued to Duke in light of these established principles and ultimately conclude, for the reasons fully stated hereafter, that the trial court erred in determining that Mission owes Duke a defense in these proceedings.
The excess or umbrella liability insurance policy issued to Duke by Mission was in full force and effect on the date of Radar's accident, November 18, 1983. The policy provided a liability limit of $5,000,000 with a $10,000 deductible. The underlying insurer listed in the policy was Northwest Insurance Company, which provided comprehensive general liability in the amount of $300,000 for bodily injury, per occurrence.
In determining that Mission owed Duke a defense in the instant case, the trial judge found the language of the following "defense" provision in Mission's policy to be ambiguous:
"As respects occurrences covered under this policy, but not covered under the underlying insurances as set out in the attached schedule or under any other collectible insurance, the Company shall: (a) defend in his name and behalf any suit against the Insured alleging liability insured under the provisions of this policy and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company;
..."
After considering the insurance policy in its entirety, we cannot agree with the trial court that the defense provision is ambiguous. On the contrary, we find that it clearly does not obligate Mission to provide a defense for Duke under the circumstances.
As aforestated, an insurance contract must be interpreted as a whole, and all terms and provisions of such must be construed together to ascertain the true intent of the parties. Elledge v. Warren, 263 So.2d 912 (La.App. 3rd Cir.1972), writ refused, 266 So.2d 223 (La.1972); Glass Services Unlimited v. Modular Quarters, supra.
We must therefore consider all other pertinent provisions of Mission's policy in order to derive the intended meaning of its defense provision. The coverage provisions of the policy state:
"III. LIMIT OF LIABILITY The Company shall only be liable for the ultimate net loss the excess of either
(a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances.
or (b) The amount as set out in Item 2(c) of the Declarations [$10,000 deductible amount] ultimate net loss in respect of each occurrence not covered by said underlying insurances.
(hereinafter called the `underlying limits'):
and then only up to a further sum as stated in Item 2(a) of the Declarations [$5,000,000] in all in respect of each occurrencesubject to a limit as stated in Item 2(b) of the Declarations [$5,000,000] in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Insured.

*535 In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder this policy subject to all the terms, conditions and definitions hereof shall
(1) in the event of reduction pay the excess of the reduced underlying limit
(2) in the event of exhaustion continue in force as underlying insurance.
The inclusion or addition hereunder of more than one Insured shall not operate to increase the Company's limits of liability beyond those set forth in the Declarations."
The other relevant policy provisions are as follows:
"L. OTHER INSURANCE If other valid and collectible insurance with any other insurer is available to the Insured covering a loss also covered by this policy, other than insurance that is specifically stated to be excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.
. . . . .
S. MAINTENANCE OF AND RESTRICTIONS IN UNDERLYING INSURANCES It is a condition of this policy that the policy or policies referred to in the attached "Schedule of Underlying Insurances" shall be maintained in full effect during the policy period without reduction of coverage or limits except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this policy. Failure of the Named Insured to comply with the foregoing shall not invalidate this policy but in the event of such failures, the Company shall only be liable to the same extent as it would have been had the Named Insured complied with the same condition."
After a thorough and complete reading of Mission's excess insurance policy, especially with regard to the above quoted provisions, we find no ambiguity in the defense provision. The provision clearly provides that Mission will defend Duke in the following situations: (1) for any occurrence covered by Mission's policy but not covered under the underlying policy provided by Northwest, or (2) for occurrences not covered under any other collectible insurance. The other collectible insurance referred to in this provision is defined later in the policy as meaning "valid and collectible" insurance with any other insurer available to Duke. The "other insurance" provision of the policy provides that, in the event Duke is insured by other such insurance, that insurance would go into effect as additional underlying insurance (unless the policy provided otherwise), and Mission's policy would thus be in excess of such other "valid and collectible" insurance.
The defense provision in Mission's policy sets forth two alternative situations which would trigger Mission's duty to provide a defense for Duke. Assuming coverage under Mission's policy for the occurrence in question, Mission owes Duke a defense if Northwest's underlying insurance policy does not provide coverage for the specific occurrence or if the occurrence is not covered by any other collectible insurance. The word "or" separating the two conditions is a disjunctive conjunction setting apart the two mutually exclusive alternatives. In the instant case, Northwest's underlying insurance policy did provide coverage for the occurrence giving rise to this suit, thereby relieving Mission of a duty to defend Duke.
It is important to note that Mission's policy mandates that the other insurance be "valid and collectible", whereas there is no such requirement placed upon the scheduled underlying insurances, i.e., Northwest's policy of insurance. Thus, while the Mission policy specifically requires the "other insurance" to be valid and collectible, no such restriction is placed on the underlying Northwest policy of primary insurance. The policy expressly mandates *536 that the other insurance be valid and collectible. We cannot disregard the clear import of this language utilized in the Mission policy. Clearly, the plain and ordinary meaning of the policy dictates that Mission's duty to defend does not arise in the instant case where the accident at issue is covered by the underlying insurance policy provided by Northwest, irrespective of Northwest's insolvency. Mission's policy does not insure Northwest's solvency, but rather simply provides for insurance in excess of the amounts specified in Northwest's primary insurance policy.
The "Maintenance Of And Restrictions In Underlying Insurances" provision of the policy, as quoted earlier, lends further support to our conclusion. The provision provides in part that the policy of underlying insurance "... shall be maintained in full effect during the policy period without reduction of coverage or limits except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this policy...." The provision thereafter provides that in the event the insured fails to maintain its policy of underlying insurance, Mission's liability would remain as though the policy of underlying insurance were still in existence. This provision further evidences Mission's intent to remain liable solely for any liability in excess of the limits of the underlying insurance.
Our research has failed to disclose any Louisiana cases dispositive of the issue presented. However, decisions from other jurisdictions lend persuasive support to our holding. In the factually similar case of Molina v. United States Fire Ins. Co., 574 F.2d 1176 (4th Cir.1978), the U.S. Fourth Circuit Court of Appeal affirmed the lower court's award of summary judgment in favor of the excess insurer, finding that it was not obligated to provide Molina, its insured, a defense due to the primary insurer's insolvency. The Court of Appeal reasoned that:
"In our opinion these conclusions of the district court were mandated by the plain reading of the U.S. Fire policies. Under its policies U.S. Fire agreed to pay on Molina's behalf `the ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay,' and the `retained limit' is defined as `the total of the applicable limits of the underlying policies listed in Schedule A.' Schedule A in Molina's policies required underlying professional insurance of $100,000.00 per claim and $300,000.00 in the aggregate. Clearly the obligation of U.S. Fire was to pay only the ultimate net loss in excess of the policy limits of the primary coverage of Professional's policies."
The Court also based its holding on the excess insurer's maintenance provision which was similar to the maintenance provision in the instant case.
In ruling in favor of the excess insurer in the case of St. Vincent's Hospital & Medical Center v. Insurance Company of North America, 457 N.Y.S.2d 670, 117 Misc.2d 670 (1982), the Supreme Court, New York County, held that, "[i]nsolvency and/or unidentifiability do not create liability on the part of the excess insurer because these occurrences are not in `excess of the amounts specified' in the primary policy as the contract demands in order for the excess insurance to be used".
In Prince Carpentry, Inc. v. Cosmopolitan Mutual Ins. Co., 124 Misc.2d 919, 479 N.Y.S.2d 284 (1984), the excess insurer was relieved from liability due to the primary insurer's insolvency. The court in Prince stated, "[t]he excess policy is triggered by `exhaustion' of the underlying policy only by reason of losses paid thereunder ... Catastrophe policy though it may be, the excess insurer is not insuring against the insolvency of the primary insurer, but only against the possibility of a verdict in excess of $500,000 for any individual".
In the recent opinion of Continental Marble and Granite v. Canal Ins. Co., 785 F.2d 1258 (5th Cir.1986), the court was faced with an identical issue, i.e., whether *537 the excess insurer is liable to defend and indemnify its insured where the primary insurer has become insolvent. (It is interesting to note that the primary insurer in that case was also Northwest Insurance Company). The trial court entered summary judgment in favor of the excess insurer. In affirming that judgment, the Court of Appeal reasoned:
"... Imposing the duty of indemnification on Canal would, in effect, transmogrify the policy into one guaranteeing the solvency of whatever primary insurer the insured might choose. See Golden Isles Hospitals, Inc. v. Continental Casualty Co., 327 So.2d 789, 790 (Fla.App. 1976). An excess liability insurer obviously does not anticipate this heavy onus:
Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. A second insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy.

Whitehead v. Fleet Towing Co., 442 N.E.2d 1362, 1366 (Ill.1982). Continental Marble's proposed rule would require insurance companies to scrutinize one another's financial wellbeing before issuing secondary policies. The insurance world is complex enough; to impose this additional burden on companies such as Canal would only further our legal system's lamentable trend of complicating commercial relationships and transactions...."
The court in Canal also distinguished the excess policy in that case from other excess policies which extend coverage for liability exceeding that covered by "other valid and collectible insurance". As mentioned earlier, the excess policy in the instant case contains no such provision.
Finally, appellant has supplied this court with a copy of a judgment from the United States District Court for the Western District of Louisiana, No. 85-1592; a case in which Mission National Insurance Company sought a summary judgment against Duke Transportation Co., Inc. The court therein granted Mission the relief sought declaring that Mission did not owe Duke a defense or insurance coverage below the policy amount of $300,000, on the excess insurance policies numbered 017817 and 024181. The latter is the same policy as the one involved in the instant litigation. In his reasons for ruling, the trial judge held:
"Under the plain language of Mission's policy there is no obligation to pay for any loss which is within the limits of the Northwest policy, that is, until the loss exceeds $300,000. The occurrences involved in these cases were covered by the underlying insurance. Further reduction or exhaustion of the limits of the underlying insurance can only be accomplished under the terms of [sic] umbrella policy by payment of losses under the underlying insurance and not by the insolvency of Northwest. See, Molina v. U.S. Fire Ins. Co., 574 F.2d 1176,1178 (4th Cir.1978).

..."
In light of the above, we hold that the trial court committed clear error in finding the Mission excess insurance policy to be ambiguous. We find that the provisions thereof are clear and, under the circumstances of the instant case, do not obligate Mission to provide a defense for Duke. Because of our holding in this respect, we pretermit the issue raised by Mission as to Duke's wrongful use of summary process.
For the above and foregoing reasons, the judgment of the trial court on the rule to show cause which ordered Mission National Insurance Company to provide a defense for Duke Transportation, Inc. is reversed and set aside. This matter is remanded to the trial court for further proceedings consistent with the views expressed. All costs of these proceedings are to be paid by appellee, Duke. Costs at the trial level are to await a final determination of this matter.
REVERSED AND REMANDED.
NOTES
[1] Radar amended his petition to add Mission as a defendant on September 17, 1985, following the trial court's decision on the rule to show cause.
[2] In its judgment, the trial court also held that Mission was responsible under the policy to provide a defense for Duke in the suit brought against it by Radar in the U.S. District Court in Mississippi. Due to our ultimate holding in the instant case, we need not discuss the trial court's jurisdiction, or lack thereof, for such an order.