[Nos. 21702–0–I; 21704–6–I.   Division One.   June 19, 1989.]

FEDERAL INSURANCE COMPANY, *Respondent,* v. PACIFIC
SHEET METAL, INC., ET AL, *Appellants.*

*Charles L. Meyer* and *Weckworth, Barer & Meyer,* for
appellant Pacific Sheet Metal, Inc.

*Richard Martens, Alan B. Hughes,* and *Waitt, Johnson
& Martens,* for appellants R.C. Winter and Assocs., et al.

*Philip A. Talmadge* and *Karr Tuttle Campbell,* for
respondent.

GROSSE, J.—Pacific Sheet Metal, Inc., R.C. Winter & Associates, Inc., and Pay'N Pak Stores, Inc., appeal from a summary judgment entered for Federal Insurance Company.

On May 1, 1984, Federal Insurance Company (Federal) issued a commercial umbrella liability policy to Pacific Sheet Metal, Inc. (Pacific). On January 3, 1985, a fire occurred while Pacific was performing as a subcontractor on a roof repair and ventilation job for a Pay'N Pak store. Pay'N Pak sued Pacific and the general contractor, R.C. Winter & Associates (Winter), alleging damages of $225,000. Winter settled with Pay'N Pak for $193,297.50 in exchange for an assignment of Pay'N Pak's rights against Pacific.

The key policy provision at issue provides:

### 2. UNDERLYING LIMIT—RETAINED LIMIT

The Company shall be liable only for the **ultimate net** loss the excess of the greater of the **insured's underlying limit or retained limit** defined as:

    (a) **Underlying limit**—an amount equal to the limits of liability indicated beside the underlying insurance listed in the schedule of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the **insured;**

    (b) **Retained limit**—. . .[1]

A property damage liability policy issued by Holland America was in effect from May 1, 1984, through May 1, 1985, and was listed on the schedule of underlying insurance in the umbrella policy. Holland America is insolvent and unable to pay on its policy. Federal brought a declaratory action seeking an order that it has no obligation to pay any portion of the loss. It denied coverage alleging that it is only liable for losses in excess of the scheduled limit of the underlying policy ($250,000). The trial court agreed.

Appellants argue that the policy is ambiguous; that case law and the words of the policy support what is termed "drop down" coverage in circumstances such as these where the underlying insurer is insolvent. "Drop down" coverage

---

[1]The retained limit was zero and is not a factor in the case.

occurs when the excess carrier is obligated to provide the coverage that the underlying insurer had agreed to provide. In the instant case if Federal would have to provide "drop down" coverage it would have to pay the entire amount of the settlement. In granting summary judgment to Federal, the trial court held that the policy was not ambiguous and did not provide "drop down" coverage. We agree.

Appellants argue that the Federal policy is ambiguous and, therefore, must be construed against the insurer. They urge us to adopt the rule that an insurance policy is ambiguous if courts of different jurisdictions differ with respect to the construction of the policy. The A.L.R. annotation cited by both parties states that the largest number of cases collected support the proposition that the fact there is a difference of judicial opinion with respect to the construction of language in insurance policies is at least evidence of an ambiguity. Annot., 4 A.L.R.4th 1255, § 2[a] (1981). *Cf. Sayan v. United Servs. Auto. Ass'n*, 43 Wn. App. 148, 154, 716 P.2d 895 (applying a similar rule to statutory ambiguities), *review denied*, 106 Wn.2d 1009 (1986).

In *Crunk v. State Farm Fire & Cas. Co.*, 38 Wn. App. 501, 686 P.2d 1132 (1984), the Court of Appeals held a policy provision ambiguous because of a difference of opinion among courts of different jurisdictions with respect to the meaning of the provision at issue. However, on review, the Washington Supreme Court held that the policy was not ambiguous and expressly rejected the rule posited by the Court of Appeals. *Crunk v. State Farm Fire & Cas. Co.*, 106 Wn.2d 23, 719 P.2d 1338 (1986).[2]

---

[2]Although the majority opinion did not expressly address the issue, Justices Goodloe and Dore wrote separate opinions which did. Justices Brachtenbach, Utter, and Pearson concurred with Justice Goodloe. Justice Dore, although dissenting on other grounds, also rejected the rule and explained his disagreement with this rule of law as follows:

While some other jurisdictions have adopted this rule, the rule in this state has never allowed other courts in other states to determine whether an ambiguity exists. For example in *Truck Ins. Exch. v. Rohde*, 49 Wn.2d 465, 303 P.2d 659, 55 A.L.R.2d 1288 (1956) and *Grange Ins. Ass'n v. MacKenzie*, 103 Wn.2d 708, 694 P.2d 1087 (1985) this court has found terms in insurance policies unambiguous even though other jurisdictions have differed as to the terms' meanings. To do otherwise would mean whenever two reasonable courts

In this jurisdiction it is settled that coverage is ambiguous "'when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable'". *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 912, 631 P.2d 947 (1981) (quoting *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976)). Presumably, when there is a difference of opinion between courts as to the interpretation of the same policy language, the language is susceptible to differing reasonable interpretations. Thus, there is some logic to the majority rule as expressed in the annotation. However, the danger of the rule is perhaps best illustrated by reference to one of the cases cited by the appellants.

*Geerdes v. St. Paul Fire & Marine Ins. Co.*, 128 Mich. App. 730, 341 N.W.2d 195 (1983),[3] involved a clause that included the same wording as the Federal clause entitled UNDERLYING LIMIT—RETAINED LIMIT: "plus the applicable limits of any other underlying insurance collectible by the insured." *Geerdes*, 341 N.W.2d at 196. The issue of drop down coverage was raised because the underlying policies were apparently not available to cover the loss from an accident. The Michigan court held that coverage clause was unambiguous and that the policy provided drop down coverage. The holdings were premised on the court's definition of "other". The court read the word "other" from the phrase "other underlying insurance collectible by the insured" as indicating that the only policies to be considered in the calculation of ultimate net loss are those that are collectible. The only discussion of the meaning of "other" in *Geerdes* occurs in a footnote:

> Compare, for example, the following sentence: "I have read *Murder on the Orient Express* and other mystery novels written by Agatha Christie." By virtue of the word

---

disagreed on the interpretation of a term in an insurance policy, the insured would prevail.
*Crunk,* 106 Wn.2d at 31–32 (Dore, J., dissenting).

[3]*Accord, Poirrier v. Cajun Insulation, Inc.,* 501 So. 2d 800, 807–08 (La. Ct. App. 1986).

"other" in the final clause, the sentence clearly conveys the notion that *Murder on the Orient Express* is a mystery novel by Agatha Christie. To construe the sentence as suggesting that the cited writing lacks any of those qualities would be to ignore the ordinary meaning of the word "other".

*Geerdes,* at 734 n.1.

█ "Other" has two equally important meanings: "being the one (as of two or more) left: not being the one (as of two or more) first mentioned or of primary concern". *Webster's Third New International Dictionary* 1598 (1981). Rather than arbitrarily adopting one of these meanings as the *Geerdes* court did, we believe that the word "other" must be considered in context. The phrase at issue, "other underlying insurance collectible by the insured", is separated from the rest of the clause by a comma and the connecting word "plus". In contrast to the *Geerdes* court, we define the word "other" as "not being the one first mentioned". The adjective "collectible" modifies only the noun "insurance" which directly precedes it. The clause defining ultimate net loss is not ambiguous: it obligates Federal to pay only the excess over the scheduled limits plus the limits of any other underlying insurance that is collectible by the insured. Ultimate net loss is defined by reference to a readily ascertainable number, $250,000, which represents the "limits of liability indicated beside the underlying insurance listed in the schedule of underlying insurance . . .". The policy obligates Federal to pay only the excess of those limits unless the limits of liability of the underlying policies have been exhausted solely as a result of occurrences.

Thus, the fact that this court differs with the *Geerdes* court cannot rationally be considered as evidence of an ambiguity. The problem remains one of determining whether there are two "reasonable" interpretations. In this case we believe that there is only one reasonable interpretation of the clause in question. Therefore we hold that the language of the Federal policy is unambiguous and does not provide for drop down coverage. *See Washington Ins. Guar. Ass'n v. Guaranty Nat'l Ins. Co.,* 685 F. Supp. 1160

(W.D. Wash. 1988) (word collectible does not mean funds actually paid and does not support drop down coverage).

Our reading of the clause entitled UNDERLYING LIMIT—RETAINED LIMIT is consistent with other pertinent clauses in the Federal policy. We reject appellants' contention that the OTHER INSURANCE clause contradicts the clause at issue and the COVERAGE clause; thus creating an ambiguity.[4] An "other insurance" clause is designed to avoid concurrent coverage. Note, *Effect of Conflicting "Other Insurance" Clauses*, 41 Wash. L. Rev. 564, 565 (1966). The OTHER INSURANCE clause at issue refers to *other* valid and collectible insurance covering a loss also covered by the Federal policy, *i.e.*, concurrent, not to the underlying policy which provides coverage that is not concurrent with the Federal policy.

In the alternative, were we to hold that the clause entitled UNDERLYING LIMIT—RETAINED LIMIT ambiguous, we would reach the same result. In that circumstance we would be required to construe the entire contract together and give the contract "a fair, reasonable, and sensible construction, consonant with the apparent object and intent of the parties, a construction such as would be given the contract by the average man purchasing insurance." *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 434, 545 P.2d 1193 (1976). The remaining clauses in the Federal policy support the judgment that the Federal policy does not drop down to cover occurrences

---

[4]The **OTHER INSURANCE** clause reads as follows:

"If other valid and collectible insurance with any other insurer is available to the **insured** *covering a loss also covered by this policy,* other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. . . ." (Italics ours.)

The **COVERAGE** clause provides:

"In consideration of the payment of the required premium, the Company hereby agrees, subject to all of the terms of this policy, to pay on behalf of the **insured** all sums, as more fully defined by the term **ultimate net loss**, for which the **insured** shall become obligated to pay by reason of liability

"(a) imposed upon the **insured** by law or

"(b) assumed under contract or agreement by the **insured**, arising out of **personal injury, property damage or advertising liability** caused by an **occurrence.**"

that Holland America cannot cover because of insolvency. The COVERAGE clause makes Federal liable for the ultimate net loss arising out of property damage caused by an occurrence. "Occurrence" is defined as an accident which results in property damage. The term does not refer to damage caused by the insolvency of the underlying insurance carrier. Other provisions of the policy, in particular the clauses entitled LIMITS OF LIABILITY and DEFENSE PROVISIONS, are consistent.[5] Federal's policy only drops down when the limits of liability of the underlying policies are exhausted *solely* as the result of **occurrences.** Even if there is no coverage by the underlying policies, Federal pays only the ultimate net loss.

After reviewing and reading the clauses together as a whole, and also giving effect to each clause, we conclude that the Federal policy does not "drop down" and does not obligate Federal to pay the settlement proceeds. In *Value City, Inc. v. Integrity Ins. Co.,* 30 Ohio App. 3d 274, 508 N.E.2d 184 (1986), the Ohio Court of Appeals reached the same conclusion. That court held that the excess insurance

---

[5] **3. LIMITS OF LIABILITY**

Regardless of the number of persons and organizations who are **insureds** under this policy and regardless of the number of claims made and suits brought against any or all **insureds**, the total limit of the Company's liability for **ultimate net loss** resulting from any one **occurrence** shall not exceed the amount specified in Item 4(a) of the declarations.

The Company's liability shall be further limited to the amount stated as the annual aggregate limit in Item 4(b) of the declarations on account of all **occurrences** during each policy year arising out of either the **products hazard** or **completed operations hazard** or both combined.

In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, are exhausted solely as the result of **occurrences** taking place after the inception date of this policy, this policy shall, subject to the Company's limit of liability and to the other terms of this policy, with respect to **occurrences** which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the Company aggregate limit of liability (stated in Item 4(b)) is exhausted, but not for broader coverage than was provided by the exhausted underlying insurance.

. . .

The policy's DEFENSE PROVISIONS similarly are limited to occurrences and limit Federal's obligation to defend only to the extent of its share of the ultimate net loss in proportion to the total amount of the ultimate net loss.

contract did not obligate the carrier to bear the risk of loss of paying and defending claims, which were within the limits of the underlying insurance policy issued by an insolvent carrier. The excess policy in the *Value City* case contained the same coverage clause as is in the instant case.

The policy is clear and unambiguous. Alternatively, any ambiguity is readily resolved when the policy is considered as a whole. It does not provide drop down coverage.

The decision of the trial court is affirmed. Federal moved to strike the reply brief of Pacific on the grounds that it contained evidentiary material which was not part of the record. RAP 9.12 precludes consideration of this evidence; therefore, in view of our decision on the merits, we decline to strike the brief and we decline to impose sanctions.

COLEMAN, C.J., and COLE, J. Pro Tem., concur.

Review denied at 113 Wn.2d 1008 (1989).